AO 91 (Rev. 08/09) Criminal Complaint

FILED
RICHARD W. NAGEL
CLERK OF COURT
OCT - 1 2026 2:50 P
U.S. DISTRICT COURT
SOUTHERN DISTRICT
OF OHIO-DAYTON

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

United States of America
v.
Terrance Tyler

*Defendant(s)*

Case No. 3:26-mj-406

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of September 30, 2026 in the county of Montgomery in the Southern District of Ohio, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 USC s. 841(a)(1)&(b)(1)(C) | possession with intent to distribute a mixture or substance containing a dectable amount of fentanyl and a mixture or substance containing a detectable amount of cocaine, both Schedule II controlled substances |
| 18 USC s. 922(g)(1)&924(a)(8) | felon in possession of a firearm |
| 18 USC s. 924(c) | possession of a firearm in furthernace of a drug trafficking crime |

This criminal complaint is based on these facts:

See Attached Affidavit of Janna Penfield

☑ Continued on the attached sheet.

Janna Penfield
*Complainant's signature*

Janna Penfield, ATF SA
*Printed name and title*

Sworn to by reliable electronic means -- namely, telephone.

Date: 10/1/2026

*Judge's signature*

City and state: Dayton, Ohio

Caroline H. Gentry, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

Your Affiant, Janna Penfield, deposes and states:

## INTRODUCTION

1. Your Affiant is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), United States Department of Justice, and has been so employed since August 2018. Prior to becoming a Special Agent with ATF, I was a United States Probation Officer with the United States Probation Department through the Southern District of Ohio from October 2014 through January 2018. Additionally, from August 2007 through October 2014, I was a Parole Officer through the State of Ohio, which included a special assignment position with the United States Marshal Service as a Task Force Officer on the Southern Ohio Fugitive Apprehension Strike Team. I have completed the Federal Criminal Investigator Training Program and the ATF Special Agent Basic Training at the Federal Law Enforcement Training Center in Glynco, Georgia. I have also completed the Initial Pretrial and Probation Training Program at the Federal Law Enforcement Training Center in Charleston, South Carolina, and the State of Ohio Parole Academy in Columbus, Ohio. In addition to the firearms, arson, and explosives-related training received in these courses, Your Affiant has also conducted and participated in numerous investigations involving firearms, firearms trafficking, and narcotics.

## PURPOSE OF AFFIDAVIT

2. I make this affidavit in support of a criminal complaint against, and an arrest warrant for, Terrance TYLER for violations of:

a. 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (knowing and intentional possession with intent to distribute a mixture or substance containing a detectable amount of fentanyl and cocaine, Schedule II controlled substances);

b. 18 U.S.C. § 922(g)(1) (felon in possession of a firearm);

c. 18 U.S.C. § 924(c) (possession of a firearm in furtherance of a drug trafficking crime.

3. The statements contained in this Affidavit are derived from information provided to me by other law enforcement agencies, from my review of records and reports relating to the investigation as well as my own investigation of this matter. This Affidavit does not include every fact known to me regarding this investigation but seeks to summarize relevant information.

## SUMMARY OF PROBABLE CAUSE

4. During late summer and early fall 2026, Logan County Sheriff's Office (LCSO) and Montgomery County Sheriff's RANGE Task Force (R.A.N.G.E.) discovered a drug trafficking ring operating between Logan and Montgomery Counties, Ohio. As detailed below, these agencies identified Terrance TYLER as the likely source of supply for this drug ring.

5. During August 2026, LCSO used a confidential informant (CI) to purchase narcotics in Logan County from a person identified herein as Individual A. (Based on information from RANGE and LCSO, I know the identity of Individual A). Based on the controlled purchase, LCSO obtained and executed a tracking warrant on Individual A's vehicle. Between August 2026 and September 2026, data from the tracking warrant indicated that Individual A's vehicle made multiple trips from Logan County to 835 Kumler Avenue, Dayton, Ohio – the home of Terrance TYLER as detailed below. Several of these trips coincided with controlled buys for narcotics from Individual A in Logan County, suggesting that Individual A's supplier lived at the Kumler Residence. For instance:

a. On or about August 12, 2026, the tracking data from the search warrant reflected Individual A's vehicle travelling to Dayton, Ohio. LCSO contacted RANGE and

requested assistance performing surveillance on Individual A's vehicle while it was in Montgomery County, Ohio. RANGE observed Individual A arrive in Dayton and then approach an alley between Kumler Avenue and Catalpa Drive. Around that time, surveillance saw a black male (later identified as TYLER) exit 835 Kumler Avenue, briefly meet with Individual A, and then return to the Kumler residence. Individual A returned to his car and drove back to Logan County, Ohio, where he completed a drug sale to the CI. It should be noted that GPS data from Individual A's vehicle reflected several stops as he drove back from Dayton to Logan County, Ohio. Despite those stops, RANGE and LCSO investigators believed that, based on their training and experience, Individual A had obtained the drugs that he sold to the CI from TYLER.

b. Following the transaction, law enforcement reviewed open-source databases to determine who lived at 835 Kumler, Dayton, Ohio, and one or more records linked TYLER to this address. For instance, TYLER listed 835 Kumler, Dayton, Ohio, as his address on his Ohio driver license. Additionally, law enforcement performed a criminal history check on TYLER and learned that he had been convicted during 2024, in the United States District Court for the Southern District of Ohio, Case No. 3:25CR15MJN, of being a felon in possession of a firearm, and was sentenced to 43 months of imprisonment. (Given the length of this sentence, TYLER knew that he had been convicted of felony punishable by a term of imprisonment exceeding one year). TYLER was released from the Bureau of Prisons on that conviction during 2026, and provided 835 Kumler, Dayton, Ohio, as his home address for purposes of his supervised release. Reviewing a photograph of TYLER, law enforcement confirmed that the was the person who had met with Individual A.

6. During mid-September 2026, LCSO arranged another controlled purchase of drugs from Individual A. On the day before the planned controlled purchase, tracking data for

Individual A's vehicle showed that it travelled from Logan County to 835 Kumler Avenue, Dayton before returning to Logan County. Investigators believe that this pattern of travel proved consistent with TYLER sourcing drugs to Individual A. On the day of the planned controlled buy in mid-September 2026, LCSO made contact with Individual A and, during a search of his vehicle, discovered 240 grams of cocaine and 22 grams of methamphetamine within it. Individual A was subsequently interviewed and admitted to possessing the above-mentioned narcotics. Individual A conformed that he travelled to Dayton, Ohio, to purchase narcotics from "T". Investigators showed a picture of TYLER to Individual A, and Individual A identified TYLER as "T", the person from whom he had purchased the drugs found in the car.

7. Based on the above-described investigation as well as other information, investigators obtained a state search warrant for 835 Kumler Avenue, Dayton, Ohio. On September 30, 2026, state law enforcement executed the warrant, and, upon making entry into 835 Kumler Avenue, discovered TYLER as well as a woman within the residence. After removing TYLER and the woman, officers searched the home and discovered within it: several cellphones, five firearms (a Glock, two Ruger pistols, Bulldog .44 caliber revolver, and a Keltec pistol – all of which are manufactured outside of Ohio), U.S. currency, various baggies of narcotics, numerous rounds of ammunition, narcotics processing equipment, digital scales, and a ballistic vest. The baggies of narcotics – which collectively contained ounces of controlled substances – field tested for the presence of fentanyl and cocaine. Law enforcement discovered four of the five guns in a bedroom that appeared to belong to TYLER as the room contained his wallet, male clothing, and paperwork with his name on it.

8. Law enforcement Mirandized TYLER, and he agreed to speak with officers. TYLER admitted that there might be drugs in the home that were "old", i.e., that he had kept from

before he went to federal prison. When initially questioned if there were firearms in the home, TYLER indicated that he was not sure. Law enforcement asked TYLER concerning a bookbag found in the house that contained drugs packaged for sale along with a Glock handgun. TYLER again stated that the drugs were old and that he had not touched them since 2017.

9. Law enforcement also Mirandized the woman who was discovered in the home, and she agreed to speak with police. The woman indicated that she had been staying with TYLER at the Kumler residence for a couple of weeks and denied having any drugs, guns, or bulk cash at the house.

10. As mentioned above, during the search, officers discovered in plain view throughout the residence indicia of drug trafficking activity. Five firearms were located throughout the house.[1] Based on my training and experience, I know that it is common for drug traffickers to keep firearms at their stash houses to protect themselves and their drugs from rival drug dealers, customers, and robbers. Consistent with the conclusion, the Glock firearms was located in close proximity to a baggie containing bulk amounts of suspected controlled substances. Based on my training and experience, I know that, given the street value of the drugs in this home (which is in the thousands of dollars) as well the bulk cash, a drug trafficker would not allow an unwitting participant to be present in the residence.

[1] Based on my training and experience, I know that none of these firearms are manufactured in Ohio and thus moved in interstate commerce to reach this state.

11. Based upon the above-listed facts and circumstances, Your Affiant believes and asserts that there is probable cause to issue the above requested complaints.

Janna Penfield

Janna Penfield, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

This Affidavit was sworn to me by the Affiant via telephone on this 1st day of October 2026.

Honorable Caroline H. Gentry
United States Magistrate Judge